IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| LINDA ALVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-3440-CV-S-DGK-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Linda Alves seeks judicial review of the Commissioner's denial of her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g).

Alves alleges she was disabled as of October 16, 2006. After careful review of the record the Court finds the Commissioner's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

**Standard of Review**

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable

1

mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* As long as substantial evidence in the record supports the Commissioner's decision, the court may not reverse the Commissioner's decision because substantial evidence in the records supports a different result, even if the court might have decided the case differently were it the initial finder of fact. *Id.*

**Analysis**

Generally a federal court's review is restricted to determining whether the Commissioner's decision is consistent with the Social Security Act, the regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled, the Commissioner follows a five-step evaluation process.[1]

Alves argues the administrative law judge ("ALJ") (1) erred at step two in determining that borderline intellectual functioning and physical impairments were not severe impairments: (2) erred at step three by failing to consider whether Alves meets Listing 12.05(C) for mental retardation; (3) failed to correctly assess the medical opinions of Drs. Janice May and Edwin Roeder; and (4) improperly determined her residual functional capacity ("RFC") in finding that

---

[1] The five-step process works as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

she had no medically determinable impairment which could be expected to last at least twelve months.

**A.     Substantial evidence on the record supports the ALJ's finding that Alves's intellectual function and physical impairments were not sever impairments.**

Alves alleges that both her intellectual functioning and long history of neck and back pain stemming from a car accident are severe impairments that the ALJ failed to recognize at step two in the evaluation process.

In order to meet the threshold severity requirement at step two, a claimant must show (1) she has an impairment or combination of impairments which (2) significantly limits her physical or mental ability to perform basic work activities[2] without regard to age, education, or work experience. 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the Court of Appeals has observed, "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (internal citation omitted).

Here the ALJ acknowledged Alves's assertions of pain and the diagnosis of borderline intellectual functioning before concluding that neither was credible. The ALJ also accounted for Alves's mental and physical complaints in other ways. First, by making an alternative finding as if Plaintiff had serious leg limitations. Second, by including specific cognitive work-related restrictions even though she found Plaintiff's borderline intellectual functioning was not a severe impairment.

---

[2] Basic work activities include physical functions such as walking, sitting, and lifting; mental functions such as understanding, performing, and remembering simple instructions; using judgment; and dealing with changes in a routine work situation. 20 C.F.R. § 404.1521(b).

3

As an initial matter substantial evidence on the record supports the conclusion that Alves's claims are not credible. With respect to her claim of borderline intellectual functioning, although Dr. Brook Whisenhunt, Ph.D., a consultative psychologist hired by the Social Security Administration, and Dr. Janice May, Psy.D., a psychologist who examined Alves twice at her attorney's request, gave her a provisional diagnosis of borderline intellectual functioning, her treating psychiatrist, Dr. Thomas Zurkowski, M.D., believed she was of "average intelligence," thus the ALJ did not have to defer to the consulting doctors' opinions. Additionally, the ALJ specifically discussed the consulting doctors opinions and gave solid reasons for finding them wanting. The ALJ noted that the Minnesota Multiphasic Personality Inventory – II test Dr. May administered was invalid, and that Dr. May herself estimated Alves to be functioning in the average range of intellectual ability. With respect to Dr. Whisenhunt's opinion, the ALJ noted that she had not administered any testing instrument except the "Mini Mental Examination," and this was without validity testing, and that Alves reported different family histories to each doctor, which called into question Alves candor, and gave rise to an inference that she was exaggerating the severity of her problems. The ALJ's decision not to credit the consulting doctors' opinions is validated by the fact that there is little evidence in the record suggesting that Alves had any difficulty with the adaptive functioning required by her daily life in caring for her home and her children.

Substantial evidence on the record also supports the ALJ's finding that Alves's back and neck pain stemming from her car accident in 2009 were not severe impairments. The ALJ recognized she had been in a serious accident, but concluded her injuries would likely heal within the required twelve month period. In the alternative, the ALJ considered what would happen if she did not improve. The ALJ found she would have physical limitations, and adopted

the opinion of Alves's treating physician about what the job restrictions arising from those physical limitations would be, finding that Alves retained the ability to perform sedentary work. Accordingly, the ALJ's decision is supported by substantial evidence on the record.

**B.     The ALJ properly found Alves was not disabled under listing § 12.05(C).**

Next Alves argues that the ALJ failed to properly evaluate whether she should be considered disabled under listing § 12.05 for significantly subaverage general intellectual functioning. Alves contends she meets listing § 12.05(C), which requires her to show (1) the onset of a mental or intellectual impairment before age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006). Alves contends she fulfills all three requirements, but does not explain how she meets the first or third requirements.

She cannot make this explanation because she does not meet the first and third requirements. While her IQ tests in a range contemplated by the listing, there is no evidence of any onset of mental impairment before age 22, nor is there any evidence that such an impairment imposes a significant work-related limitation of function. Indeed, as discussed above, the ALJ noted her treating psychiatrist believed her behavior was consistent with average intelligence.

Consequently, substantial evidence on the record supports the determination that Alves does not meet listing § 12.05(C).

**C.     The ALJ correctly assessed the opinions of Drs. May and Roeder.**

Alves also contends the ALJ erred in not giving greater weight to the opinions of two examining physicians, Dr. May and Dr. Edwin Roeder, M.D., the orthopedic surgeon who treated her after the 2009 car accident. Alves contends the ALJ dismissed Dr. May's opinion

with biased statements not reflective of the medical evidence of record, and failed to perform any analysis or even mention Dr. Roeder's medical source statement, substituting her own opinion for Dr. Roeders.

The ALJ did not err by not affording Dr. May's opinion controlling weight. Dr. May was a consulting physician, not a treating physician, who saw Plaintiff only twice, thus her opinion was not due any particular weight unless it was particularly well-supported and consistent with the balance of the record. However, it was neither. There is evidence that Alves exaggerated her symptoms, for example, by telling Dr. May that her parents had sexually abused her and other people, but telling Dr. Whisenhunt that she had actually moved to Missouri to be closer to her parents. The ALJ also noted that Alves's MMPI score was invalid, and that she had an almost normal mental status examination with Dr. May, but Dr. May nontheless accepted her claim of extreme mental dysfunction. The ALJ also noted the opinion of Alves's treating psychiatrist, Dr. Zurkowski, who found Alves to be articulate, of average intelligence, and able to "lead a functional life." Consequently the ALJ did not err in declining to give Dr. May's opinion much weight.

Likewise, the ALJ's treatment of Dr. Roeder's opinion was not in error. Although Plaintiff contends the ALJ rejected Dr. Roeder's opinion, she did not, she substantially adopted it. For example, Dr. Roeder opined Alves could frequently lift ten pounds, the ALJ limited her to five. Dr. Roeder opined Plaintiff could not stand or put weight on her leg and, given that she appeared to have been walking without her leg braces or crutches when she saw Dr. Roeder in March of 2009, the ALJ assumed that she could work for short periods of time. The ALJ's sitting limitations were also the same as Dr. Roeder's, and the ALJ also adopted the same limitations for driving and environmental exposure as Dr. Roeder proposed.

Consequently, the Court finds no error in the ALJ's assessment of the doctors' opinions.

**D.     The ALJ properly determined Alves's residual functional capacity.**

Finally, Alves contends the ALJ's RFC is not proper. Alves argues the ALJ's discussion fails to account for all of her impairments, fails to provide support for each limitation given, misstates the evidence of record, and is not indicative of a non-adversarial determination. More specifically, Alves complains that the ALJ did not sufficiently explain why Dr. May's opinion should be given less weight than Dr. Whisenhunt's, and also failed to include sufficient limitations regarding her physical impairments.

The Court finds no merit to these arguments. The ALJ's decision with respect to Alves's RFC is well-supported by the record. As discussed above, the ALJ provided sufficient reasoning for discounting Dr. May's opinion. Even if the ALJ's explanation could have been more detailed, the reasoning between the evidence and the decision is clear enough. And any deficiency in the ALJ's opinion writing does not warrant setting aside the decision where, as here, the deficiency has no bearing on the result. *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008). With respect to the limitations imposed by her physical impairments, the Court notes the ALJ formulated an alternate RFC that was consistent with Dr. Roeder's opinion in case Alves's leg injury lasted for longer than twelve months, and even with this alternate RFC, the ALJ found she was was still capable of working, and this finding is supported by substantial evidence in the record. Accordingly, there was no error here.

**Conclusion**

After careful examination of the record as a whole, the Court finds the Commissioner's determination is supported by substantial evidence, and the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  May 23, 2011                                  /s/ Greg Kays
                                                                 GREG KAYS, JUDGE
                                                                 UNITED STATES DISTRICT COURT